*In re* ELEANOR ARMELL, a Minor.

First District (2nd Division)   No. 1—88—1003

Opinion filed January 16, 1990.—Rehearing denied February 13, 1990.

Patrick T. Murphy, Public Guardian, of Chicago (Helene M. Snyder, of counsel), for appellant.

Sidley & Austin, of Chicago (Diane B. LaPlante, of counsel), for appellee.

Craig Dorsay, of Oregon Legal Services, of Portland, Oregon, and Indian Law Support Center, of Boulder, Colorado (Robert Golten, of counsel), for *amici curiae*.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

The public guardian appeals from the circuit court order dismissing the neglect and dependency proceeding in the juvenile court and transferring the case to the jurisdiction of the tribal court of the Prairie Band of Potawatomi Indians (Potawatomi tribe) pursuant to the provisions of the Indian Child Welfare Act (ICWA) (92 Stat. 3069, 25 U.S.C. §§1901 through 1963 (1978)). As attorney for the minor respondent, the public guardian contends that: (1) under the provisions of the ICWA, good cause existed for the circuit court not to transfer jurisdiction of the case; (2) if the ICWA is interpreted to permit jurisdiction by the tribal court, it is unconstitutional; and (3) the circuit court lacked subject matter jurisdiction.

On April 15, 1985, Eleanor Armell, who was born on November 5, 1981, and was then 3½ years old, was found going through a garbage can in an alley in the Uptown neighborhood of Chicago. Eleanor was found to have an active, untreated case of tuberculosis. Michelle Powless, Eleanor's undomiciled mother, could not be found until sometime later.

The Division of Child Protective Services, a division of the Illinois Department of Children and Family Services (DCFS), conducted an investigation which included interviews with a relative and social workers from various social agencies, including American Indian organizations and the Winnebago tribe. The investigation, at that time, indicated that Eleanor's deceased father, Powless, and Eleanor belonged to the Winnebago tribe. Pursuant to the provisions of the ICWA, that tribe was notified and became involved in the case.

On April 17, 1985, after a hearing in the juvenile court, temporary custody of Eleanor was awarded to DCFS, which then placed her with her maternal great aunt. On May 3, 1985, after removal from her aunt's home at her aunt's request, Eleanor was placed in the foster home of Petty Officer and Mrs. Paul Swett in Great Lakes, Illinois. An American Indian and a member of the Menomenee tribe, Mrs. Swett immediately involved Eleanor in the activities of the Menomenee tribe and has continued to educate Eleanor about her Indian heritage and culture.

After temporary custody had been given to DCFS, the case was continued to give the Winnebago tribe an opportunity to intervene. On September 20, 1985, Powless objected to a motion by the Winnebago tribe to transfer the case to its tribal court pursuant to the ICWA. That objection by Eleanor's mother effectively barred transfer of the case to the Winnebago tribal court. (See 25 U.S.C. §1911(b) (1978).) On May 5, 1987, the Winnebago tribe again intervened and again filed a petition to transfer jurisdiction and dismiss the case. On July 20, 1987, Powless again objected to the transfer of jurisdiction to the Winnebago tribal court.

On October 6, 1987, the date set for trial, the Winnebago tribe filed an emergency motion to stay foster care placement, arguing that placement with the foster family was improper because the "minor child presently is placed in a foster care placement with a family where the father is not Native American and the mother is not Winnebago or Potawatomi." This motion provided the first indication that Michelle Powless was not a Winnebago Indian, but a Potawatomi Indian. The circuit court continued the case pending notification of the Potawatomi tribe to determine whether Eleanor's mother was a Pota-

watomi and, if so, to ascertain if the Potawatomi tribe wished to intervene.

On October 21, 1987, the Potawatomi tribe informed the court that Powless was an enrolled member of the Prairie Band of Potawatomi Indians and that Eleanor was not a member, but was eligible for enrollment in the tribe. On November 17, 1987, the Potawatomi tribe entered an appearance and filed a motion to transfer jurisdiction and dismiss the case. On December 10, 1987, Eleanor was enrolled as a member of the tribe, without the knowledge or consent of her temporary custodian, DCFS. On December 18, 1987, pursuant to the Potawatomi tribe's motion for transfer, Powless, through her counsel the public defender, informed the court that she did not object to transfer of jurisdiction. Neither the Winnebago tribe nor the State's Attorney objected to transfer. DCFS made no response. The public guardian, as Eleanor's attorney, objected to transfer, asserting that "good cause" existed for Illinois to retain jurisdiction of this case because it would not be in the child's best interest for the Potawatomi tribe to exercise jurisdiction.

The public guardian then sought discovery to present certain evidence to the court. After Powless and the Winnebago tribe objected, arguing that there were no factual issues and that only legal issues were involved, the circuit court quashed the notices of deposition which had been sent by the public guardian.

On March 18, 1988, after presentation of written briefs and oral arguments, the circuit court found that good cause did not exist for Illinois to retain jurisdiction of this case and ordered that jurisdiction be transferred to the Potawatomi tribal court. The public guardian filed a notice of appeal on the same day, and the circuit court granted a stay of the order until March 31, 1988. On that day, the public guardian, as counsel for Eleanor, filed an emergency motion with this court for stay of the circuit court order. This court initially granted a temporary stay pending receipt of briefs on the issue, and, on April 13, 1988, this court denied a permanent stay. On April 18, 1988, the public guardian filed a motion for supervisory order with the Illinois Supreme Court requesting a stay of the circuit court order. The Potawatomi tribe filed its objection to this motion on April 23, 1988. On April 27, 1988, while there was no stay of the circuit court order in effect, the Potawatomi tribal court convened and affirmatively accepted jurisdiction of the proceeding. After the tribal court ordered that temporary custody of Eleanor be awarded to the tribe's social service agency pending an investigation to determine the best possible placement for her, that agency determined that Eleanor should re-

main with her present foster parents while it made its investigation.

On May 3, 1988, the Illinois Supreme Court entered a supervisory order staying enforcement of the circuit court's order pending the appeal. Subsequently, on May 13, 1988, the public guardian requested that the circuit court set a status hearing in the juvenile case. Counsel for the Potawatomi tribe, counsel for the Winnebago tribe, the State's Attorney, and the public defender as Powless' lawyer responded to this motion by arguing that the May 3, 1988, order of the Illinois Supreme Court staying all proceedings was unenforceable because the Potawatomi tribal court had entered its order on April 27, 1988, which effectively deprived the supreme court of jurisdiction. The circuit court refused to enter an order and struck the case from its call, stating it did not have jurisdiction and that it needed further direction from the Illinois Supreme Court.

The public guardian then filed a motion in the supreme court for a further supervisory order. Relying upon the April 27, 1988, tribal court order and the provision of the ICWA which requires States to give full faith and credit to tribal court orders in child custody proceedings (25 U.S.C. §1911(d) (1978)), the Potawatomi tribe, joined by the State's Attorney and the public defender, filed a motion for reconsideration of the supervisory order. On August 24, 1988, the Illinois Supreme Court entered an order affirming its previous entry of the supervisory order.

During the pendency of this case, Eleanor has continued to live in the home of Petty Officer and Mrs. Swett. In the summer of 1987, Swett was transferred to California. Because of her highly adverse reaction to the prospect of removal from the Swett home, Eleanor was allowed by DCFS and the court, over the objections of the Winnebago tribe, to move to California with the Swett family. Eleanor has therefore lived with her foster family for more than half of her eight years of life.

### THE INDIAN CHILD WELFARE ACT (ICWA)

The ICWA of 1978 (92 Stat. 3069, 25 U.S.C. §§1901 through 1963 (1978)) was enacted to prevent the results of the separation of large numbers of Indian children from their families and tribes caused by adoption or foster care placement in non-Indian homes by State child welfare entities. The congressional findings that were incorporated into the ICWA reflect the sentiment that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children. (25 U.S.C. §1901 (1978).) Hence, the ICWA provides Indian tribes jurisdiction to determine child placement and adoption.

At the core of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings. Section 1911 provides a dual jurisdictional scheme. Section 1911(a) establishes exclusive jurisdiction in the tribal courts for proceedings concerning an Indian child "who resides or is domiciled within the reservation of such tribe." Section 1911(b), the section applicable to the case at bar, creates tribal jurisdiction in cases involving children not domiciled on the reservation. It states:

> "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, *in the absence of good cause to the contrary*, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe." (Emphasis added.) 25 U.S.C. §1911(b) (1978).

## I. "GOOD CAUSE" ISSUES

The public guardian initially contends that, in this case, there was "good cause" not to transfer jurisdiction to the Potawatomi tribal court. The burden of establishing good cause not to transfer is on the party opposing the transfer. 44 Fed. Reg. 67,591 (1978).

The public guardian argues that in determining whether there was "good cause" not to transfer jurisdiction, the circuit court should have: (a) considered the best interests of Eleanor; (b) determined whether there was a good-faith compliance with the ICWA; (c) applied *forum non conveniens* considerations; and (d) ruled that Eleanor's mother should have been estopped from consenting to the transfer.

## A

The public guardian argues that pursuant to the ICWA and Illinois law the circuit court should have taken into account the best interests of Eleanor in deciding whether good cause existed not to transfer the case. He contends that when ascertaining whether good cause existed, the circuit court should have interpreted section 1911(b) in conjunction with section 1902, which states that a policy of the ICWA is to protect the best interests of Indian children. He argues that in determining the existence of good cause, the circuit court should have considered such factors as the psychological effects of a transfer on Eleanor. Relying upon *In re G.L.O.C.* (1983), 205 Mont. 352, ____,

668 P.2d 235, 238, and *In re M.E.M.* (1981), 195 Mont. 329, 336, 635 P.2d 1313, 1317, the public guardian maintains that failure to consider these factors and the child's best interests constituted reversible error. We disagree.

The two cases relied upon by the public guardian are not relevant to a determination of the existence of good cause under section 1911(b). Both *In re M.E.M.* and *In re G.L.O.C.* are authority that a hearing must be held, with counsel representing the parents, to determine whether good cause exists not to transfer. (*In re M.E.M.*, 195 Mont. at 336, 635 P.2d at 1317; *In re G.L.O.C.*, 205 Mont. at ____, 668 P.2d at 237.) In the instant case, a hearing was held in which all parties were represented by counsel and in which the issue was whether good cause existed not to transfer jurisdiction.

■■ What is good cause not to transfer jurisdiction is set forth by the Department of the Interior, Bureau of Indian Affairs (BIA), which has published guidelines for the implementation of the ICWA. (Guidelines for State Courts, Indian Child Custody Proceedings (1979), 44 Fed. Reg. 67,584 *et seq.* (1978).) The BIA guidelines, while not controlling, must be accorded great weight in construing the ICWA. *Batterton v. Francis* (1977), 432 U.S. 416, 424, 53 L. Ed. 2d 448, 456, 97 S. Ct. 2399, 2405.

The BIA guidelines state that good cause not to transfer exists when the child's tribe does not have a tribal court or when any of the following circumstances exist:

"(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.

(ii) The Indian child is over twelve years of age and objects to the transfer.

(iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.

(iv) The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe." 44 Fed. Reg. 67,591 (1978).

Moreover, the BIA guidelines state that socio-economic conditions and the perceived adequacy of tribal or BIA social services may not be considered in determining whether good cause exists. Commentary to this section of the BIA Guidelines stresses that an Indian child's lack of present contacts with a tribe or reservation should not be used to justify denying transfer, since tribes have a transcendent interest

in developing a relationship with their members. (BIA Guidelines, §C.3. Commentary, 44 Fed. Reg. 67,591 (1978).) The case law supports the definition of "good cause" under section 1911(b) propounded by the BIA. See *In re Junious M.* (1983), 144 Cal. App. 3d 786, 796, 193 Cal. Rptr. 40, 46 (the child's lack of contacts with a tribe or his inability to form any sort of tribal identification does not prevent transfer of jurisdiction); *In re Appeal in Coconino County Juvenile Action No. J—10175* (1987), 153 Ariz. 346, 736 P.2d 829 (the fact that an Indian child had been living in a non-Indian home is not a reason not to adhere to the jurisdictional provisions of the ICWA).

■ Moreover, considerations involving the best interests of the child are relevant, not to determine jurisdiction, but to ascertain placement. (See *Mississippi Band of Choctaw Indians v. Holyfield* (1989), 490 U.S. 30, 104 L. Ed. 2d 29, 109 S. Ct. 1597; *In re Appeal in Pima County Juvenile Action No. S—903* (1981), 130 Ariz. 202, 203, 635 P.2d 187, 188, *cert. denied sub nom. Catholic Social Services v. P.C.* (1982), 455 U.S. 1007, 71 L. Ed. 2d 875, 102 S. Ct. 1644.) For example, the Utah Supreme Court held in *In re Adoption of Halloway* (Utah 1986), 732 P.2d 962, 971-72, that issues of bonding and ultimate placement of the child were not proper considerations when the circuit court was deciding the issue of jurisdiction. We conclude, based upon all the foregoing, that, though any psychological effects the transfer may have on Eleanor may properly be considered when ascertaining placement, they are not factors which should be considered when deciding jurisdiction. Accordingly, the circuit court's order quashing the notice of depositions, whose intent was to discover what psychological effect a transfer might have on Eleanor, was correct.

■ We find no merit in the public guardian's argument that because Illinois law requires that in juvenile proceedings the best interests of the child are of paramount importance (see, *e.g.*, Ill. Rev. Stat. 1987, ch. 37, par. 801—2(3)(c); *Moseley v. Goldstone* (1980), 89 Ill. App. 3d 360, 369, 411 N.E.2d 1145, 1152), good cause not to transfer jurisdiction exists in this case since transfer is against Eleanor's best interests. The United States Supreme Court in *Mississippi Band of Choctaw Indians v. Holyfield* (1989), 490 U.S. 30, 45, 104 L. Ed. 2d 29, 46, 109 S. Ct. 1597, 1608, in interpreting section 1911(a) of the ICWA, reasoned that when Congress enacted the ICWA, it intended nationwide uniformity of terms and that State laws should not frustrate that intention. Therefore, the ICWA's provision regarding "good cause" not to transfer jurisdiction should not be interpreted by individual State law. Illinois' best-interest-of-the-child considerations are therefore inapplicable to ICWA's jurisdictional requirements.

In *Choctaw*, though three years had elapsed since the children involved in that case had been adopted, the Supreme Court held that the legal question to be decided was *who* was to make the custody determination, "not what the outcome of that determination should be." (*Mississippi Band of Choctaw Indians v. Holyfield* (1989), 490 U.S. 30, 53, 104 L. Ed. 2d 29, 50, 109 S. Ct. 1597, 1611.) In pertinent part, the Court stated:

> "It is not ours to say whether the trauma that might result from removing these children from their adoptive family should outweigh the interest of the Tribe—and perhaps the children themselves—in having them raised as part of the Choctaw community. Rather 'we must defer to the experience, wisdom, and compassion of the [Choctaw] tribal courts to fashion an appropriate remedy.' " *Mississippi Band of Choctaw Indians v. Holyfield* (1989), 490 U.S. 30, 54, 104 L. Ed. 2d 29, 50, 109 S. Ct. 1597, 1611, citing *In re Adoption of Halloway* (Utah 1986), 732 P.2d 962, 972.

We conclude that good cause not to transfer the case to the tribal court has not been shown. As the United States Supreme Court stated in *Choctaw*, Congress expressed a preference for the tribal court to determine these matters regardless of any psychological impact upon the child. Illinois' best-interests-of-the-child considerations do not provide sufficient bases to deny transfer of jurisdiction under the ICWA "good cause" provision.

## B

The public guardian maintains that the good-faith efforts made in this case to comply with the ICWA constitute good cause not to transfer jurisdiction. He argues that the failure, until October 1987, of the Winnebago tribe and Powless to disclose that Powless was a member of the Potawatomi, not the Winnebago, tribe was fraud, as "[f]raud comprises anything calculated to deceive, as in acts, omissions, and concealment including breach of legal or equitable duty, trust or confidence resulting in damage to another, and encompasses silence if accompanied by deceptive conduct or suppression of material facts constituting active concealment." (*Grane v. Grane* (1985), 130 Ill. App. 3d 332, 344, 473 N.E.2d 1366, 1374.) No cases are cited for the public guardian's conclusion that, given the bad-faith conduct of Eleanor's mother, the good-faith effort to comply with the ICWA constituted good cause not to transfer the case.

There is no evidence in this case that the pendency of these proceedings was known by the Potawatomi tribe before October 1987.

The ICWA specifically provides that the child's tribe has the right to intervene at any point in the proceeding:

> "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding." 25 U.S.C. §1911(c) (1978).

In fact, the Potawatomi tribe intervened and requested the transfer of jurisdiction immediately after it received notice of the proceedings. Neither the ICWA nor any other authority requires denial of transfer to the tribal court based upon nondisclosure by Powless of her tribal identity. The public guardian's good-faith argument must be rejected.

### C

The public guardian next argues that determination of good cause not to transfer jurisdiction necessitates the application of a modified doctrine of *forum non conveniens*. He cites the BIA guidelines that good cause not to transfer a custody proceeding involving an Indian child may exist if the "evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or witnesses." 44 Fed. Reg. 67,591 (1978).

However, the cases the public guardian relies upon are factually distinguishable from the instant matter. In *In re Bird Head* (1983), 213 Neb. 741, 747, 331 N.W.2d 785, 790, the court held transfer was improper because all the acts complained of occurred off the reservation and witnesses testified it would be impossible for them to attend the tribal court. (See also *In re J.R.H. & M.J.H.* (Iowa 1984), 358 N.W.2d 311, 317.) In *In re Adoption of Baby Boy L.* (1982), 231 Kan. 199, 643 P.2d 168, the Kansas Supreme Court determined that the boy was outside the ambit of the ICWA because the mother was non-Indian.

In contrast to those cases, this case is clearly subject to the ICWA, and *forum non conveniens* factors have not been shown. Social workers stated by affidavit that it would be no hardship for them to testify before the tribal court and copies of all DCFS reports have already been transmitted to the tribal court. Since Eleanor now lives in California, it cannot be said that it would be more convenient to conduct hearings in Illinois than in Kansas.

Furthermore, liberal expansion of the *forum non conveniens* doctrine would preclude transferring jurisdiction to tribal courts except in cases where the child resides on or near a reservation. Acceptance of the public guardian's argument in this case would be contrary to

the congressional findings and goals incorporated into the ICWA.

### D

The public guardian next contends that Powless should be estopped from consenting to the transfer because she chose to remain silent for 2½ years, despite ample opportunity to divulge her actual tribal affiliation while judicial proceedings progressed. See *In re Pubs, Inc.* (7th Cir. 1980), 618 F.2d 432, 438; *In re Walton Hotel Co.* (7th Cir. 1940), 116 F.2d 110, 112.

■ There is no evidence, however, that Powless purposely deceived DCFS or the public guardian. Moreover, the ICWA provides no basis to deny Powless the power to exercise her rights. We note another provision of the ICWA which gives parents the absolute right to withdraw their consent to adoption at any time up to the time a final decree of adoption is granted (25 U.S.C. §1913(c) (1978)), and conclude that the relevant portion of the ICWA (25 U.S.C. §1911(b) (1978)) provides no basis for the imposition of estoppel in this case.

### II. CONSTITUTIONAL ISSUES

The public guardian asserts that section 1911(b) of the ICWA is unconstitutional as applied to Eleanor, because: (a) it is violative of the equal protection guarantee of the fourteenth amendment since it involves a suspect class to which no compelling governmental interest is implicated, or it lacks a rational basis; and (b) it is violative of the due process clause of the fourteenth amendment since it grants jurisdiction to a tribal court over a child who has had no contacts with the tribe.

### A

■ When Federal legislation involves a suspect class, that legislation is subject to strict scrutiny and can be upheld only if necessary to promote a compelling interest. (*Doe v. Edgar* (7th Cir. 1983), 721 F.2d 619, 622.) However, the ICWA does not involve a suspect class. Federal legislation with respect to Indian tribes is not based upon impermissible racial classifications, but derives from the special status of Indians as members of quasi-sovereign tribal entities. (*United States v. Antelope* (1977), 430 U.S. 641, 646, 51 L. Ed. 2d 701, 707, 97 S. Ct. 1395, 1399; *Morton v. Mancari* (1974), 417 U.S. 535, 550-55, 41 L. Ed. 2d 290, 301-03, 94 S. Ct. 2474, 2483-85. See also *Washington v. Confederated Bands & Tribes of the Yakima Indian Nation* (1979), 439 U.S. 463, 500-01, 58 L. Ed. 2d 740, 767-68, 99 S. Ct. 740, 761; *Delaware Tribal Business Committee v. Weeks* (1977), 430 U.S. 73,

84-85, 51 L. Ed. 2d 173, 183, 97 S. Ct. 911, 919.) Moreover, the commerce clause (U.S. Const., art. I, §8) gives Congress plenary power to regulate Indians on or off a reservation and provides the congressional authority for enactment of the ICWA. H.R. Rep. No. 1386, 95th Cong., 2d Sess. 19, at 15 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 7530, 7537-38; see *United States v. Nice* (1916), 241 U.S. 591, 596, 60 L. Ed. 1192, 1194, 36 S. Ct. 696, 697; *United States v. Holliday* (1866), 70 U.S. (3 Wall.) 407, 418, 18 L. Ed. 182, 186.

Furthermore, when laws which grant special treatment to Indians are rationally related to the fulfillment of Congress' unique obligation toward Indians, those legislative judgments will not be disturbed. (*Morton v. Mancari*, 417 U.S. at 555, 41 L. Ed. 2d at 303, 94 S. Ct. at 2485.) The provisions of the ICWA were deemed by Congress to be essential for the protection of Indian culture and to assure the very existence of Indian tribes. Those provisions do not contravene equal protection. *Morton v. Mancari*, 417 U.S. at 555, 41 L. Ed. 2d at 303, 94 S. Ct. at 2485.

Regarding the public guardian's contention that the ICWA lacks a rational basis, we conclude that the protection of the integrity of Indian families is a permissible goal that is rationally tied to the fulfillment of Congress' unique guardianship obligation toward Indians. *Morton v. Mancari*, 417 U.S. at 555, 41 L. Ed. 2d at 303, 94 S. Ct. at 2485; *In re Angus* (1982), 60 Or. App. 546, 555, 655 P.2d 208, 213, *cert. denied* (1983), 464 U.S. 830, 78 L. Ed. 2d 109, 104 S. Ct. 107. See also *In re Guardianship of D.L.L.* (S.D. 1980), 291 N.W.2d 278; *In re Appeal in Pima County Juvenile Action No. S—903* (1981), 130 Ariz. 202, 208, 635 P.2d 187, 193, *cert. denied* (1982), 445 U.S. 1107, 71 L. Ed. 2d 875, 102 S. Ct. 1644.

B

The public guardian next argues that the assertion of jurisdiction by the Potawatomi tribal court over Eleanor, who has had no contacts with the tribe, violates the due process clause of the fourteenth amendment because Eleanor lacks "minimum contacts" with the tribe. The public guardian asserts that Eleanor has an interest that protects her from the imposition of jurisdiction by a forum with which she has never had any contact. (See *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471-72, 85 L. Ed. 2d 528, 540, 105 S. Ct. 2174, 2181-82; *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 319, 90 L. Ed. 95, 104, 66 S. Ct. 154, 160.) The "minimum contact" argument, however, is inappropriate in this case.

Because of the commerce clause, Congress may constitution-

ally legislate even with respect to custody litigation concerning off-reservation Indian children. (H.R. Rep. No. 1386, 95th Cong., 2d Sess. 19, at 15 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 7530, 7537-38.) The ICWA constitutes a scheme enacted by Congress to ensure that Indian tribal members are protected, regardless of the lack of present tribal contacts. (BIA Guidelines, §C.3 Commentary, 44 Fed. Reg. 67,591 (1978).) Dispositive of the "minimum contacts" contention of the public guardian is the holding of the United States Supreme Court that even without contact with the tribe or reservation since their births, and even though their Indian parents did not want tribal involvement with their children who were never residents of the reservation, the tribal court was the appropriate forum to determine the custody of children of members of the tribe. (*Mississippi Band of Choctaw Indians v. Holyfield* (1989), 490 U.S. 30, 47-52, 104 L. Ed. 2d 29, 46-48, 1109 S. Ct. 1597, 1608-09.) Consequently, Eleanor's lack of contact with the Potawatomi tribe does not contravene any of her due process rights.

### III. SUBJECT MATTER JURISDICTION ISSUE

■ In his reply brief, the public guardian asserts, for the first time, that the judgment of the circuit court should be vacated for lack of subject matter jurisdiction. This issue may be raised for the first time on appeal (*Dorr-Wood, Ltd. v. Department of Public Health* (1981), 99 Ill. App. 3d 170, 173, 425 N.E.2d 499) and is not waived for failure to raise it in the circuit court (*People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 521, 461 N.E.2d 505). The public guardian maintains that the Potawatomi tribe is not Eleanor's tribe for purposes of the ICWA because the Potawatomi tribe lacks any substantive interest protected by the ICWA since Eleanor, as an infant, spent some time on the Winnebago reservation with her father and has, therefore, had more contacts with the Winnebago tribe.

■ This argument lacks merit. The ICWA defines an Indian child's tribe as:

"(a) the Indian tribe in which an Indian child is a member or eligible for membership or (b), in the case of an Indian child who is a member of or eligible for membership in more than one tribe, the Indian tribe with whom the Indian child has the more significant contacts." (25 U.S.C. §§1903(5)(a), (5)(b) (1978).)

The Potawatomi tribe has standing since Eleanor is an enrolled member of that tribe. Since section 1903 uses the disjunctive, the provi-

sions under either (a) or (b) may be applied. Moreover, the Winnebago tribe indicated that it supports the transfer to the Potawatomi tribe.

As pointed out previously, under the ICWA, even in instances where there is a total lack of contact with a child, an Indian tribe has a very real and substantive interest in each child. (See *Mississippi Band of Choctaw Indians v. Holyfield* (1989), 490 U.S. 30, 104 L. Ed. 2d 29, 109 S. Ct. 1597.) The Potawatomi tribe is Eleanor's tribe under the ICWA, and therefore transfer to its tribal court is proper.

### CONCLUSION

In concluding that there is no good cause not to transfer this case to the Potawatomi tribal court, that the ICWA is not unconstitutional as applied in this case, and that the circuit court possessed subject matter jurisdiction, we are not unmindful of the potentially disruptive effect transfer of this case to the tribal court could have on Eleanor. As stated previously, however, our determinations in this case are related not to placement but to jurisdictional considerations. We note that the first order entered by the Potawatomi tribal court was to have Eleanor remain with her foster parents while appropriate investigations were conducted. That order reflected great sensitivity to an aspect of this case which gives it its uniqueness: that largely because of Eleanor's mother's failure to disclose her tribal identity for $2\frac{1}{2}$ years, transfer was unavoidably delayed and that, as a result, significant bonding has occurred between Eleanor and the family with which she has so long resided. We have no reason to believe that the Potawatomi tribal court, given the unique aspects of this case, will not continue to be sensitive to the best interests of Eleanor.

The circuit court's order is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.