663 N.W.2d 625 (2003)
2003 ND 98
In the Interest of A.B.
Norean Hoots, L.S.W., Petitioner and Appellant,
v.
K.B., Respondent and Appellee.
F.B., A.B., and Monty Mertz, Guardian ad Litem, Respondents.
Turtle Mountain Band of Chippewa, Intervenor and Appellee.
No. 20020309.
Supreme Court of North Dakota.
June 17, 2003.
*626 Susan Lynne Bailey, Assistant State's Attorney, Cass County Social Services, Fargo, N.D., for petitioner and appellant.
Douglas W. Nesheim (on brief), Johnson, Ramstad & Mottinger, PLLP, Fargo, N.D., for respondent and appellee.
B.J. Jones (argued), Rapid City, S.D., for intervenor and appellee.
VANDE WALLE, Chief Justice.
[¶ 1] Norean Hoots, a social worker with Cass County Social Services, ("Cass County") appealed from a juvenile court order granting a motion by the Turtle Mountain Band of Chippewa Indians ("Turtle Mountain Tribe") under the Indian Child Welfare Act ("ICWA"), 25 U.S.C. § 1901 et seq., to transfer jurisdiction of a parental termination proceeding from state juvenile court to the Turtle Mountain Tribal Court ("Tribal Court"). We affirm the transfer, holding the juvenile court did not commit reversible procedural error in overturning a judicial referee's recommendation to deny the motion to transfer, holding the juvenile court did not err in transferring jurisdiction of the child custody proceeding to Tribal Court, and holding *627 the application of ICWA to the minor child is not unconstitutional.

I
[¶ 2] A.B. was born in 1993. A.B.'s biological father, F.B., and her paternal grandmother, H.L., are enrolled members of the Turtle Mountain Tribe, and A.B. is eligible for membership in the Turtle Mountain Tribe. A.B. is therefore an "Indian child" under ICWA. See 25 U.S.C. § 1903(4). During the time relevant to this appeal, F.B. was living in the state of Washington. On March 3, 2001, A.B. was living with her mother, K.B., in Cass County, when K.B. was arrested for driving under the influence. K.B. advised police that A.B., then age 7, and two younger siblings were home alone. A.B. was placed in protective custody, and after a March 2001 juvenile court determination that she was deprived, Cass County placed her in foster care with H.L., who was living in Fargo. At the request of H.L., Cass County placed A.B. in a non-Indian foster home in October 2001. In February 2002, K.B.'s probation was revoked, and she was sentenced to two years in jail. In a motion filed on February 20, 2002, the Turtle Mountain Tribe moved under ICWA to transfer jurisdiction of child custody proceedings involving A.B. from the state juvenile court to Tribal Court. K.B. objected, and the juvenile court refused to transfer jurisdiction to Tribal Court. See 25 U.S.C. § 1911(b) (providing, in part, state court shall transfer proceeding to jurisdiction of tribe, absent objection by either parent).
[¶ 3] On June 3, 2002, Cass County petitioned the juvenile court to terminate the parental rights of K.B. and F.B. In a motion dated July 17, 2002, and filed on July 23, 2002, the Turtle Mountain Tribe moved under ICWA to transfer jurisdiction of the proceeding involving A.B. from state juvenile court to Tribal Court. K.B. did not object to this motion to transfer jurisdiction. After a September 23, 2002 hearing, a judicial referee recommended denying the motion to transfer jurisdiction, concluding it was not timely because the proceeding was at an advanced stage and a transfer of jurisdiction to Tribal Court would create a forum inconveniens. The Turtle Mountain Tribe sought review of the referee's decision under N.D. Sup.Ct. Admin. R. 13. The juvenile court reversed the referee's recommendation, concluding the Turtle Mountain Tribe's motion to transfer was made within seven weeks after Cass County's petition to terminate parental rights was filed and was timely. The juvenile court also concluded the Tribal Court was not an inconvenient forum. The juvenile court granted the Turtle Mountain Tribe's motion to transfer jurisdiction to Tribal Court and dismissed the state court petition to terminate parental rights.

II
[¶ 4] In In the Interest of D.Q., 2002 ND 188, ¶ ¶ 8-9, 653 N.W.2d 713 (citations omitted), we outlined our relevant standards of review of a juvenile court proceeding initially heard by a referee and then reviewed by a district court:
"[A] district court's review of a judicial referee's findings and recommendations under Administrative Rule 13, § 11(b), when it is a review of the record, is governed by Rule 53, N.D.R.Civ.P." "Under Rule 53(f)(2), N.D.R.Civ.P., the district court was obliged to accept the referee's findings unless they were clearly erroneous.... The correctness of a referee's findings is an issue that must be determined by the district court in the first instance." When the district court rejects a judicial referee's factual findings, this Court employs a two-step *628 review of the district court's factual determinations:
First, we must review, as a matter of law, the correctness of the district court's reversal, under the clearly erroneous standard, of any factual findings by the judicial referee. Second, if the district court's reversal of findings is upheld, we must then review the substitute or additional findings of the district court under the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P.
A judicial referee's conclusions of law are fully reviewable in the district court, and the district court's conclusions of law are fully reviewable upon appeal to this Court.
In proceedings under the Uniform Juvenile Court Act, this Court's review of a juvenile court decision is governed by N.D.C.C. § 27-20-56, which provides, in part, that an appeal from a juvenile court's final order, judgment, or decree "must be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." "This court's review of a juvenile court's order is similar to a trial de novo." "We independently review the evidence, and our review is not limited to a determination of whether the juvenile court's findings are clearly erroneous." "We afford the juvenile court's findings appreciable weight, but we are not bound by them."

III
[¶ 5] Cass County argues the juvenile court erred in not allowing it adequate time to respond to the Turtle Mountain Tribe's request for review of the referee's decision and in reversing the referee's decision without reviewing a tape or transcript of the evidentiary hearing before the referee.
[¶ 6] The referee recommended denying the Turtle Mountain Tribe's motion to transfer jurisdiction in a decision issued on October 8, 2002. In a petition dated October 16, 2002, and filed with the juvenile court on October 21, 2002, the Turtle Mountain Tribe sought review of the referee's decision under N.D. Sup.Ct. Admin. R. 13, which provides, in part:
Section 11. Procedure for Review.
(a) A review of the findings and order may be ordered at any time by a district court judge and must be ordered if a party files a written request for a review within three days after receiving the notice in Section 10(b). The request for review must state the reasons for the review.
(b) The review by a district court judge must be a review of the record, unless the court orders a hearing of the proceeding.
On October 25, 2002, without a response from Cass County and apparently without reviewing a tape or transcript of the hearing before the referee, the juvenile court reversed the referee's decision.
[¶ 7] In In the Interest of L.A.G., 1999 ND 219, ¶ ¶ 6-8, 602 N.W.2d 516, we considered similar issues in the context of N.D. Sup.Ct. Admin. R. 13 and a juvenile court order reversing a referee's denial of the State's motion to transfer from juvenile court to district court the prosecution of a juvenile for felony possession of a controlled substance with intent to deliver. The referee recommended denial of the transfer, concluding the State had failed to establish probable cause to link the controlled substance to the juvenile. Id. at ¶ 4. The juvenile court reversed the referee's recommendation and transferred the prosecution to district court. Id. at ¶ 5.
*629 [¶ 8] On appeal to this Court, the juvenile argued the juvenile court erred in failing to review a transcript of the hearing before the judicial referee and in not permitting his counsel to file a brief or argue legal issues at a hearing during the review process. L.A.G., 1999 ND 219, ¶ 6, 602 N.W.2d 516. The hearing before the judicial referee was recorded by shorthand and the transcript prepared from the reporter's notes apparently was not available to the juvenile court when it reversed the referee's decision. Id. We assumed the juvenile court did not review a tape or transcript of the hearing before the judicial referee, and we concluded that claimed failure was harmless. Id. We said our review of a juvenile court's order was similar to a trial de novo, and we concluded all the relevant factual matters presented at the evidentiary hearing were not in dispute and were included in the record reviewed by the juvenile court. Id. at ¶ 7. We said the juvenile's counsel did not argue that any testimony during the evidentiary hearing contradicted the relevant facts developed in the police reports and affidavits reviewed by the juvenile court, and any failure by the juvenile court to review a transcript of the proceedings did not constitute reversible error. Id. at ¶¶ 6-7. In rejecting the juvenile's argument that the juvenile court erred in not permitting him to file a brief or argue legal issues at a hearing during the review process, we said the record did not reflect that the juvenile's counsel made any response to the State's petition for review, or that the court prohibited the juvenile from responding. Id. at ¶ 8. We concluded the juvenile court did not commit reversible procedural error in its review of the referee's recommendation. Id.
[¶ 9] Under N.D. Sup.Ct. Admin. R. 13, § 11, a district court may order a review of a referee's findings and order at any time and must order a review if requested by a party within three days after receiving written notice of the right to review. The rule does not necessarily contemplate a response from an opposing party before a district court reviews a referee's decision and does not preclude an opposing party from asking a district court for reconsideration. Nothing in the current N.D. Sup.Ct. Admin. R. 13, required the juvenile court to allow a response from Cass County before the court considered the Turtle Mountain Tribe's request for review of the referee's decision.
[¶ 10] Moreover, the record before the juvenile court includes an affidavit of Hoots and an affidavit of Marilyn Poitra, the ICWA coordinator for the Turtle Mountain Tribe. Hoots and Poitra were the only witnesses who testified at the hearing before the judicial referee. The affidavits of Hoots and Poitra were part of the record, as well as the other juvenile court records leading up to the termination petition. Although Cass County claims there are disputed facts, we conclude the relevant facts necessary for the resolution of this case are not in dispute, and as we discuss in more detail later, the issues involved in this case are legal issues. Under these circumstances, we conclude the juvenile court's apparent failure to review a tape or transcript of the hearing was harmless, and the juvenile court did not commit reversible procedural error in its review of the judicial referee's recommendation.[1]

IV
[¶ 11] Cass County argues the juvenile court erred in reversing the referee's decision *630 because there was good cause under ICWA to deny the Turtle Mountain Tribe's motion to transfer jurisdiction to the Tribal Court. Cass County contends the Turtle Mountain Tribe's motion to transfer was not timely and the Tribal Court is an inconvenient forum.
[¶ 12] Congress enacted ICWA in 1978 as the product of a rising concern for the consequences of state welfare practices which resulted in the separation of many Indian children from their families and tribes through adoption or foster care placement in non-Indian homes. See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 32, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). See also Jesse C. Trentadue and Myra A. DeMontigny, The Indian Child Welfare Act of 1978: A Practitioner's Perspective, 62 N.D. L.Rev. 487, 494-501 (1986). In enacting ICWA, Congress declared a national policy to
protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.
25 U.S.C. § 1902.
Congress explicitly found
(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;
(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and
(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.
25 U.S.C. § 1901.
[¶ 13] At the heart of ICWA is 25 U.S.C. § 1911, a dual jurisdictional scheme for child custody proceedings involving an Indian child. See Holyfield, 490 U.S. at 36, 109 S.Ct. 1597. Under 25 U.S.C. § 1911(a), except where jurisdiction is vested in the State by existing Federal law, a tribal court has exclusive jurisdiction over a child custody proceeding involving an Indian child "who resides or is domiciled within the reservation" of that child's tribe. See Holyfield, at 36, 109 S.Ct. 1597. In Holyfield, at 47-53, 109 S.Ct. 1597, the United States Supreme Court defined domicile for an illegitimate minor child to mean the domicile of the child's mother.
[¶ 14] For an Indian child not domiciled or residing within the reservation of the child's tribe, 25 U.S.C. § 1911(b) creates concurrent but presumptive tribal court jurisdiction, see Holyfield, 490 U.S. at 36, 109 S.Ct. 1597, and provides
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding *631 to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, that such transfer shall be subject to declination by the tribal court of such tribe.
[¶ 15] ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). Under 25 U.S.C.1903(1), a "child custody proceeding" means and includes foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. A.B. is the biological minor child of F.B., an enrolled member of the Turtle Mountain Tribe, and is an "Indian child" under 25 U.S.C. § 1911(b). Absent good cause to the contrary, 25 U.S.C. § 1911(b) thus creates presumptive Tribal Court jurisdiction over any child custody proceeding involving A.B., including a foster care placement proceeding or a termination of parental rights proceeding.
[¶ 16] ICWA does not define "good cause to the contrary," but the Bureau of Indian Affairs has issued guidelines which, although not binding, are helpful for determining good cause. Department of the Interior, Bureau of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings  Part III, 44 Fed.Reg. 67583 et seq. (1979) ("BIA Guidelines"). See, e.g., People in Interest of J.L.P., 870 P.2d 1252, 1257 (Colo.Ct.App.1994); In the Interest of Armell, 194 Ill.App.3d 31, 141 Ill.Dec. 14, 550 N.E.2d 1060, 1065 (1990). The burden of establishing good cause to deny a transfer is upon the party opposing the transfer. BIA Guidelines, at 67591. See Interest of J.L.P., 870 P.2d at 1257; Armell, 141 Ill.Dec. 14, 550 N.E.2d at 1064. As relevant to this case, the BIA Guidelines state that good cause to deny transfer of a child custody proceeding to tribal court exists if the proceeding is at an advanced stage when the petition to transfer is received, or if the evidence to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses. BIA Guidelines, § C.3(b)(i) and (iii) at 67591.

A
[¶ 17] Here, the referee decided the relevant time period for determining whether the Turtle Mountain Tribe's motion to transfer jurisdiction was timely was when Cass County initiated the foster care proceeding in March 2001. The referee effectively decided the foster care proceeding was part of the termination proceeding and concluded the July 2002 motion to transfer jurisdiction was filed at an advanced stage of the child custody proceeding and was untimely. The juvenile court disagreed, concluding the relevant time for deciding whether the July 2002 motion to transfer was timely was after Cass County filed the June 3, 2002 petition to terminate parental rights, because a foster care placement proceeding and a termination of parental rights proceeding are two separate proceedings under the definition of "child custody proceeding." See 25 U.S.C. § 1903(1). The juvenile court decided the Turtle Mountain Tribe filed its motion to transfer jurisdiction approximately seven weeks after the petition to terminate parental rights was filed, and the termination proceeding was not at an advanced stage when the transfer motion was filed.
[¶ 18] Under 25 U.S.C. § 1903(1), a "child custody proceeding" means and includes foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. Foster care placement means "any action removing an *632 Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." 25 U.S.C. § 1903(1)(i). A termination of parental rights proceeding means "any action resulting in the termination of the parent-child relationship." 25 U.S.C. § 1903(1)(ii). The plain language of those definitions distinguishes between a foster care placement proceeding and a termination of parental rights proceeding. By definition, a foster care placement proceeding seeks to temporarily remove an Indian child from the child's parent or Indian custodian without terminating parental rights, while a termination of parental rights proceeding seeks to end the parent-child relationship. Those proceedings have different purposes in the realm of a "child custody proceeding." The plain language of 25 U.S.C. § 1911(b) authorizes transfer motions for either foster care placement proceedings or for termination of parental rights proceedings, and the judicial referee's interpretation of 25 U.S.C. § 1911(b) would subsume an Indian tribe's right to request transfer of a termination proceeding into its right to request transfer of an earlier foster care placement proceeding. The juvenile court's interpretation of "child custody proceeding" correctly distinguishes between proceedings for "foster care placement" and "termination of parental rights" and recognizes the different purposes that may trigger each proceeding. We conclude, as a matter of law, the juvenile court correctly interpreted ICWA to measure the relevant time period for a motion to transfer jurisdiction in this case from the filing of the petition to terminate parental rights.
[¶ 19] Cass County's petition to terminate parental rights was filed on June 3, 2002. In a motion dated July 17, 2002, and filed on July 23, 2002, the Turtle Mountain Tribe moved to transfer jurisdiction of the proceeding to Tribal Court. The Turtle Mountain Tribe's motion to transfer was some seven weeks after the petition to terminate parental rights was filed, and the transfer motion was filed about one week before a pre-trial conference and about two weeks before the scheduled trial.
[¶ 20] The commentary to the BIA Guidelines states that good cause exists to deny a transfer if a party waits until the case is almost complete and asks that it be transferred to another court and retried. BIA Guidelines, at 67590. The requirement for a timely motion to transfer is intended "to encourage the prompt exercise of the right to petition for transfer in order to avoid unnecessary delays [, because l]ong periods of uncertainty concerning the future are generally regarded as harmful to the well-being of children." Id. at 67591-67592. The requirement for a timely motion to transfer is a proven weapon against disruption caused by obstructionist tactics, because "[i]f a transfer petition must be honored at any point before judgment, a party could wait to see how the trial is going in state court and then obtain another trial if it appears the other side will win." Id. at 67590. The commentary to the BIA Guidelines indicates the requirement for a timely motion to transfer precludes a party from using delay tactics to "wear down the other side by requiring the case to be tried twice." Id. At a minimum, the BIA Guidelines contemplate that a motion to transfer is not timely if transfer would require a retrial.
[¶ 21] Whether a motion for transfer jurisdiction is timely is determined on a case-by-case basis, and some courts have held that transfer petitions are not timely *633 if filed on the morning of trial, see In re Termination of Parental Rights of Wayne R.N., 107 N.M. 341, 757 P.2d 1333, 1335-36 (1988), or after trial has commenced. See In re Termination of Parental Rights of Laurie R., 107 N.M. 529, 760 P.2d 1295, 1299 (1988). Other courts have held that transfer motions filed after the final disposition of the case are not timely. See People In re S.G.V.E., 2001 SD 105, ¶ ¶ 25-28, 634 N.W.2d 88; Matter of A.P., 1998 MT 176, ¶ 22, 289 Mont. 521, 962 P.2d 1186.
[¶ 22] Here, we reject Cass County's characterization that the Turtle Mountain Tribe filed the transfer motion on the "eve of trial." Rather, the transfer motion was filed about seven weeks after the termination petition was filed and two weeks before the scheduled trial. Although the requirement for a timely motion encourages the prompt exercise of the right to transfer jurisdiction and the Turtle Mountain Tribe's motion to transfer could have been made earlier, under the circumstances of this case we agree with the juvenile court that the transfer motion was not at an advanced stage of the proceeding to terminate parental rights. We therefore conclude the motion to transfer jurisdiction was not untimely.

B
[¶ 23] The judicial referee also decided the Tribal Court would be a forum inconveniens, stating if the Turtle Mountain Tribe's motion to transfer jurisdiction was granted, the proceeding would be terminated and there would be no forum in which to present evidence related to the long term deprivation of A.B. and her best interests. The referee also stated all the evidence relating to the child's best interest was in the juvenile court's jurisdiction. The juvenile court rejected the referee's determination, concluding there was no hardship in transferring jurisdiction to the Tribal Court because the Tribal Court had offered to hear the case in Fargo. The juvenile court said a dismissal of the state termination proceeding was a procedural formality to allow the Tribal Court to take jurisdiction.
[¶ 24] The referee's decision reflects an erroneous conclusion that there would be no forum in which to present evidence related to the deprivation of A.B. and her best interests if the transfer was granted. The referee's conclusion ignores that ICWA gives the Tribal Court presumptive jurisdiction over child custody proceedings involving an Indian child and there is no reason to believe the Tribal Court will not fulfill its obligations regarding A.B. Moreover, the commentary to the BIA Guidelines states that application of a modified doctrine of "forum non conveniens" may limit transfers to cases involving Indian children who do not live very far from a reservation, but the problem may be alleviated by having tribal courts come to the witnesses and a transfer may be conditioned on having a tribal court meet in the city where the family lives. BIA Guidelines, at 67591. Because the Tribal Court has offered to sit in Fargo for proceedings relating to A.B., we see no reason for concluding the Tribal Court is unable to adequately deal with issues pertaining to A.B. We affirm the juvenile court's decision granting the transfer of jurisdiction to the Tribal Court.

V
[¶ 25] Cass County argues the judicial referee and the juvenile court erred in refusing to consider evidence regarding A.B.'s best interest in the context of the motion to transfer jurisdiction.
[¶ 26] Although one of the goals of ICWA is to protect the best interests of an Indian child, see 25 U.S.C. § 1902, the issue here is the threshold question regarding *634 the proper forum for that decision. See Holyfield, 490 U.S. at 53, 109 S.Ct. 1597 (stating Supreme Court asked to decide legal question of who makes custody determination of Indian child, not the outcome of the decision, which is placed in the hands of tribal court). We agree with those courts that have concluded the best interest of the child is not a consideration for the threshold determination of whether there is good cause not to transfer jurisdiction to a tribal court. See J.L.P., 870 P.2d at 1258-59; Armell, 141 Ill.Dec. 14, 550 N.E.2d at 1064-67; In re C.E.H., 837 S.W.2d 947, 954 (Mo.Ct.App.1992); Matter of Guardianship of Ashley Elizabeth R., 116 N.M. 416, 863 P.2d 451, 456 (1993); Yavapai-Apache Tribe v. Mejia, 906 S.W.2d 152, 169-70 (Tex.Ct.App.1995).

VI
[¶ 27] Relying primarily on In re Santos Y., 92 Cal.App.4th 1274, 112 Cal.Rptr.2d 692 (2001), Cass County argues the transfer of jurisdiction to Tribal Court under ICWA and the circumstances of this case violated A.B.'s constitutional rights. The Turtle Mountain Tribe responds that Cass County did not raise this issue in the review before the juvenile court and is precluded from raising it on appeal.
[¶ 28] Cass County raised this constitutional issue at the hearing before the judicial referee, but the referee ruled in favor of Cass County without addressing it. The juvenile court reversed the referee's recommendation but did not address the constitutional issue. Whether a statute violates the federal or state constitutions is a question of law and is fully reviewable on appeal. Best Products Co., Inc. v. Spaeth, 461 N.W.2d 91, 96 (N.D.1990). Assuming, without deciding, that Cass County, as an entity with foster-care custody of A.B., has standing to raise her constitutional claims, because of our de novo review of juvenile court proceedings, we now consider and resolve the constitutional issue in order to infuse a degree of finality into these proceedings involving jurisdiction under ICWA for a child custody proceeding. See L.A.G., 1999 ND 219, ¶ 7, 602 N.W.2d 516.
[¶ 29] Cass County argues the transfer of jurisdiction to Tribal Court violates A.B.'s rights to substantive due process and to equal protection under the federal and state constitutions. Cass County asserts ICWA substantially interferes with A.B.'s fundamental right to a stable and permanent placement and requires different treatment for Indian and non-Indian children. Cass County argues strict scrutiny applies to ICWA's statutory intrusion on those rights and claims the Turtle Mountain Tribe's interests, which ICWA purports to promote, are not compelling under substantive due process and equal protection standards. Cass County argues "[b]lind application of the ICWA, coupled with excessive delay and/or failure of the Tribe to proffer appropriate placement options for children, increases the likelihood that an Indian child's placement will be disrupted and permanence delayed." Cass County urges us to apply the existing Indian family doctrine to prevent the unconstitutional application of ICWA to A.B. under the facts of this case.
[¶ 30] In Santos, 112 Cal.Rptr.2d at 699, the California Court of Appeals accepted similar arguments and held that application of ICWA to an Indian child was unconstitutional under the Fifth, Tenth, and Fourteenth Amendments to the United States Constitution. See also In re Bridget R., 41 Cal.App.4th 1483, 49 Cal.Rptr.2d 507 (1996). In Santos, 112 Cal.Rptr.2d at 726, the court explained ICWA was unconstitutional as applied to a child whose "sole connection with the Tribe [was] a one-quarter `Minnesota Chippewa *635 Tribe' genetic contribution from an enrolled blood line, an enrollment based on that genetic contribution." The child, who was then two and a half years old, had been living in foster care since his birth and with his "de facto parents" since he was three months old, id. at 697, and there "was no Indian family" to preserve. Id. at 726.
[¶ 31] Under those circumstances, the court concluded ICWA violated the child's substantive due process rights:
We do not disagree with the proposition that preserving Native American culture is a significant, if not compelling, governmental interest. We do not, however, see that interest being served by applying the ICWA to a multiethnic child who has had a minimal relationship with his assimilated parents, particularly when serving the tribal interests "can serve no purpose which is sufficiently compelling to overcome the child's fundamental right to remain in the home where he ... is loved and well cared for, with people to whom the child is daily becoming more attached by bonds of affection and among whom the child feels secure to learn and grow."
Santos, 112 Cal.Rptr.2d at 726.
The court also concluded ICWA violated the child's equal protection rights:
"application of ICWA which is triggered by an Indian child's genetic heritage, without substantial social, cultural or political affiliations between the child's family and a tribal community, is an application based solely, or at least predominantly, upon race and is subject to strict scrutiny under the equal protection clause." The test we apply is whether the classification serves a "compelling governmental interest" and is "narrowly tailored" to achieve its goal.
The facts upon which we relied in concluding that application of the ICWA to this Minor constituted a violation of substantive due process lead to the conclusion that application of the ICWA to the Minor constitutes a violation of equal protection of the laws under the Fifth and Fourteenth Amendments to the United States Constitution. The record reflects that the Minor has no association with the Tribe other than genetics, i.e., his one-quarter "Minnesota Chippewa blood" from an enrolled bloodline of the Tribe. Whether we characterize this genetic association as racial, ethnic, or ancestry, a determination based on "blood," on its face invokes strict scrutiny to determine whether the classification serves a compelling governmental interest and is narrowly tailored to achieve that interest. We find that it does not.
Santos, 112 Cal.Rptr.2d at 730 (citations omitted).
[¶ 32] The court further concluded there was not a substantial nexus between ICWA and the Indian Commerce Clause because
Application of the ICWA to a child whose only connection with an Indian tribe is a one-quarter genetic contribution does not serve the purpose for which the ICWA was enacted, "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families". For the reasons discussed above, as applied to this minor, the ICWA impermissibly intrudes on a power reserved to the states, their care of dependent children.
Santos, 112 Cal.Rptr.2d at 731 (citations omitted).
[¶ 33] The decision by the California Court of Appeals in Santos was based, in large part, on an existing Indian Family exception to ICWA, in which courts have addressed tensions between the best interests *636 of Indian children, families, and tribes by refusing to apply ICWA to situations in which an Indian child is not being removed from an existing Indian family with a significant connection to the Indian community. Santos, 112 Cal.Rptr.2d at 715-17. The Santos court recognized a split of authority between state courts adopting the existing Indian Family exception and state courts declining to adopt the exception. See Santos, at 716-17 n. 16 (stating nine courts had adopted the exception and nine had rejected it).
[¶ 34] To the extent Santos relies on an existing Indian Family exception, we reject that analysis because it is contrary to the plain language of ICWA, which was enacted not only to preserve interests of Indian children and Indian families, but also to protect a tribe's interest in the welfare of its children and the maintenance of its culture. See 25 U.S.C. §§ 1901, 1902. The judicial adoption of an exception to ICWA would thwart a tribe's interest in its Indian children and ignore the plain language of ICWA, which does not require an Indian child to be part of an existing Indian family or the family to be involved with the tribe. Moreover, the United States Supreme Court effectively undermined the existing Indian Family exception in Holyfield, 490 U.S. at 49-53, 109 S.Ct. 1597, when it stated that ICWA reflects congressional concern about the impact on tribes by the large number of Indian children adopted by non-Indians and emphasized that the tribe has an interest in the child which is distinct and separate from the interest of the child or the parents.
[¶ 35] We also reject Cass County's assertion that the compelling interest standard applies to its constitutional challenges to ICWA.
[¶ 36] The United States Supreme Court has consistently rejected claims that laws that treat Indians as a distinct class violate equal protection. See Washington v. Confederated Bands and Tribes of Yakima Indian Nation, 439 U.S. 463, 499-502, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979); Delaware Tribal Bus. Comm. v. Weeks, 430 U.S. 73, 84-90, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977); Fisher v. District Court, 424 U.S. 382, 390-91, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); Morton v. Mancari, 417 U.S. 535, 551-55, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). See also Matter of Appeal in Pima County, 130 Ariz. 202, 635 P.2d 187, 193 (1981); In re Marcus S., 638 A.2d 1158, 1159 (Me.1994); Matter of Miller, 182 Mich.App. 70, 451 N.W.2d 576, 579 (1990); State ex rel. Children's Servs. Div. v. Graves, 118 Or.App. 488, 848 P.2d 133, 134 (1993); Matter of Guardianship of D.L.L. & C.L.L., 291 N.W.2d 278, 281 (S.D.1980). The different treatment of Indians and non-Indians under ICWA is based on the political status of the parents and children and the quasi-sovereign nature of the tribe. See Pima County, at 193; Marcus S., at 1159; Miller, at 579; Graves, at 134; D.L.L. & C.L.L., at 281. We apply the rational basis test to Cass County's substantive due process and equal protection challenges, and we conclude ICWA is rationally related to the protection of the integrity of American Indian families and tribes and is rationally related to the fulfillment of Congress's unique guardianship obligation toward Indians. See Pima County, at 193; Marcus S., at 1159; Miller, at 579; Graves, at 134; D.L.L. & C.L.L., at 281. We hold ICWA does not deny A.B.'s right to equal protection or substantive due process.
[¶ 37] The Tenth Amendment reserves all nondelegated powers to the states. D.L.L. & C.L.L., 291 N.W.2d at 281. Congress derives its power to regulate Indian matters from Art. I, § 8 of the United States Constitution, which delegates *637 to Congress the power to regulate commerce with Indian Tribes. Congress's plenary power to legislate Indian matters is well established, and we conclude ICWA is a rational exercise of that power which does not violate the Tenth Amendment. See D.L.L. & C.L.L., at 281.

VII
[¶ 38] We affirm the juvenile court order transferring jurisdiction of child custody proceedings involving A.B. to the Tribal Court and dismissing the petition to terminate parental rights.
[¶ 39] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.
NOTES
[1] We nevertheless recognize N.D. Sup.Ct. Admin. R. 13 does not provide detailed guidance for district court review of a judicial referee's decision, and we refer this rule to the Joint Procedure Committee for appropriate study.