MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 1
Docket:      Cum-18-178
Argued:      November 7, 2018
Decided:     January 3, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF SHIRLEY T.

GORMAN, J.

[¶1]  Shirley T. and David W. appeal from an order of the District Court (Portland, *Powers, J.*) denying their and the Oglala Sioux Tribe's motions to transfer jurisdiction of this child protection matter to the Oglala Sioux Tribal Court pursuant to the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C.S. §§ 1901-1963 (LEXIS through Pub. L. No. 115-277).  Shirley T. and David W. challenge the court's determination that there is good cause within the meaning of ICWA not to transfer the matter to the Tribal Court.  We affirm the court's denial of the motion to transfer jurisdiction.

I.  BACKGROUND

[¶2]  There are two children at issue in this consolidated child protection matter—the son (the son) of Shirley T. (the mother) and David W. (the father), and Shirley T.'s niece (the niece), for whom Shirley T. has served as legal

guardian since 2011.[1] On July 21, 2016, the Department of Health and Human Services initiated child protection proceedings as to both children in the District Court (Bridgton) with allegations involving substance abuse, domestic violence, insufficient supervision, mental health issues, the unexplained death of another of the mother's children, verbal and physical aggression toward the children, the father's prior conviction for sexual abuse of a minor, and the father's lack of involvement in the son's life.[2] The court (*MG Kennedy, J.*) granted preliminary protection orders that day placing the children in Department custody.

[¶3] The mother waived her right to a summary preliminary hearing as to both children and later agreed to the entry of a jeopardy order by the court (*Powers, J.*) based on her substance abuse and mental health issues. The father also agreed to the entry of a jeopardy order as to the son on grounds that the father was convicted of sexual abuse of a minor in 2006, resides on the Tribe's reservation in South Dakota, and has not had contact with the son for several

---

[1] The Department has twice used a title 22 action to protect this child from her legal guardian. If the mother's guardianship of the niece is not in the niece's best interest, the Department should petition to terminate the guardianship pursuant to 18-A M.R.S. § 5-212 (2017).

[2] The two matters were transferred to the District Court (Portland).

years.[3]   In the jeopardy proceedings, the court also determined that ICWA applies to both matters because the children are, or are eligible to become, registered members of the Oglala Sioux Tribe of South Dakota.  *See* 25 U.S.C.S. § 1903(4).

[¶4]  In December of 2017, the mother, the father, and the Tribe (as an interested party) requested that the matter be transferred to the jurisdiction of the Tribal Court in South Dakota pursuant to ICWA; the Tribe also filed an order from the Tribal Court accepting jurisdiction as to both children.

[¶5]  The court conducted a testimonial hearing on the motions to transfer jurisdiction, at which both children, the niece's counselor, the niece's foster mother, the son's foster father (who is the father of the son's half-siblings), the Department supervisor, the guardian ad litem (GAL), a qualified ICWA expert, and the Tribe's ICWA technician testified.  The Department, the GAL, both children, and the ICWA expert opposed the transfer. By order dated April 13, 2018, the court made the following findings of fact, which are supported by competent evidence presented at the motion hearing.

[¶6]  The son was thirteen years old at the time of the hearing and lives with the father of his three half-siblings, who are also Indian children.  The son

---

[3] The court entered a jeopardy order as to the niece's mother after an evidentiary hearing.  The niece's mother is not participating in this appeal, and the identity of the niece's father is unknown.

4

is happy in this household and wishes to stay. The son's biological father has never been active in the son's life.

[¶7] The niece, who was twelve years old at the time of the hearing, was born in South Dakota but moved to Maine at a young age. The niece lived with the mother since at least 2011, but was placed in foster care from 2015 to March of 2016 and again in July of 2016. She and the son go to the same school and interact there; the niece also maintains a close relationship with the rest of her cousins—the son's half-siblings—who live in the area with their father.

[¶8] The niece has been in counseling since 2015, with a short break in 2016. She has disclosed to her counselor a history of various forms of significant abuse, some of which occurred when she was young and living on the reservation in South Dakota. The niece has developed a trusting relationship with her counselor, with whom she should continue working to process her grief from her traumatic history and to decrease her anxiety.

[¶9] Both children are doing well in their current placements, where they are growing up as part of their Indian family in Maine, that is, with strong ties to the son's half-siblings/the niece's cousins. They have also been exposed to Indian culture while living with the mother.

[¶10] The children were the subject of prior child protection proceedings initiated in 2014. During those proceedings, the Tribe also moved to transfer jurisdiction to the Tribal Court, but the mother opposed the transfer, and the court (Bridgton, *Darvin, J.*) also found good cause to deny the requested transfer. The GAL opined that the mother's support of the motion to transfer in the present matter is premised on her wish to "circumvent the safety requirements of DHHS in the reunification process by enlisting intervention from the Oglala Sioux Tribal Court." The Tribe has no presence in Maine.

[¶11] The Department has been providing services to the children and their family for an extended period of time. The children have extensive connections to Maine, including education services. Thus, the court determined, "Most of the relevant people with knowledge of the children's lives, including teachers and counselors, are in the local Maine area." The niece's mother and the son's father live elsewhere, and they have had almost no interaction with the children. The court concluded, "The State of Maine courts and Maine [Department] with its consistent history of involvement with this family are in the best position to determine the issues presented for review in this case now and in the near future. All knowledgeable witnesses needed to adjudicate this case further are in southern Maine. It would be a relative

6

hardship to the parties and interven[ors] were these cases moved almost 2,000 miles away despite any possible audio/video accommodations."

[¶12]  On this basis, the court found, by clear and convincing evidence, that there was good cause to deny the transfer of jurisdiction to the Tribal Court.  The mother and father each appealed as to the son, and the mother also appealed as to her niece.[4]

## II.  DISCUSSION

[¶13]  ICWA was enacted in 1978 to address concerns, among others, "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions," and "that the States . . . have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families."  25 U.S.C.S. § 1901(4)-(5); *see In re Trever I.*, 2009 ME 59, ¶ 15, 973 A.2d 752; *In re Denice F.*, 658 A.2d 1070, 1072 (Me. 1995).  Based upon its determination that "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their

---

[4] The two matters were consolidated on appeal.  The Tribe is not participating in the appeal.

children," 25 U.S.C.S. § 1901(3), Congress established "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes," 25 U.S.C.S. § 1902.

[¶14] Among ICWA's requirements are jurisdictional provisions for child custody proceedings regarding Indian children. 25 U.S.C.S. § 1911; *see* 25 U.S.C.S. § 1903(1) (defining "child custody proceeding"); 25 U.S.C.S. § 1903(4) (defining "Indian child"). Pursuant to 25 U.S.C.S. § 1911(b), when an Indian child subject to child custody proceedings is "not domiciled or residing within the reservation of the Indian child's tribe," the State court and tribal court have concurrent jurisdiction[5] over that proceeding:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, that such transfer shall be subject to declination by the tribal court of such tribe.

The tribal court's jurisdiction is "presumptive[]" unless a parent objects, the tribe declines jurisdiction, or good cause to maintain the matter in the state

---

[5] A tribal court has exclusive jurisdiction over a child custody proceeding regarding an Indian child "who resides or is domiciled within the reservation" or who is a ward of a tribal court. 25 U.S.C.S. § 1911(a) (LEXIS through Pub. L. No. 115-277).

court is established. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989).

[¶15] Here, there is no dispute that these are "child custody proceedings" to which ICWA applies, 25 U.S.C.S. § 1903(1); the children are "Indian children" within the meaning of ICWA, 25 U.S.C.S. § 1903(4); the children do not reside on the reservation, *see* 25 U.S.C.S. § 1911(a); the parents do not oppose the Tribe's motion to transfer, *see* 25 U.S.C.S. § 1911(b); and the Tribe has agreed to accept jurisdiction, *see* 25 U.S.C.S. § 1911(b). The issue in this appeal is the application of the good cause exception to deny the transfer of jurisdiction.[6]

[¶16] We interpret de novo section 1911—and, in particular, the good cause requirement—by first evaluating its plain language. *See Curtis v. Medeiros*, 2016 ME 180, ¶ 14, 152 A.3d 605. Section 1911 does not define "good cause," does not set out the procedure for determining good cause, does not establish the burden or standard of proof necessary to find good cause, and

---

[6] Our consideration of this appeal does not conflict with our prior decisions holding that only jeopardy orders, termination of parental rights judgments, and medical treatment orders may be appealed pursuant to 22 M.R.S. § 4006 (2017). *See In re L.R.*, 2014 ME 95, ¶¶ 5-9, 97 A.3d 602; *In re B.C.*, 2012 ME 140, ¶¶ 12-14, 58 A.3d 1118; *In re Kristy Y.*, 2000 ME 98, ¶¶ 5, 12, 752 A.2d 166. The decision at issue here is not a child protection order issued pursuant to title 22; it is instead a jurisdictional order entered pursuant to ICWA. *See In re Jacob C.*, 2009 ME 10, ¶ 12, 965 A.2d 47 (holding that a parental rights and responsibilities order entered pursuant to title 19-A in the context of a title 22 child protection proceeding may be appealed). Although the appeal is interlocutory, we consider it pursuant to the collateral order exception to the final judgment rule. *See Bond v. Bond*, 2011 ME 105, ¶ 11, 30 A.3d 816; *infra* n.12.

does not suggest how a good cause determination is reviewed on appeal. We therefore conclude that the statute is ambiguous, and we look to other indicia of legislative intent to determine its meaning. *See Manirakiza v. Dep't of Health & Human Servs.*, 2018 ME 10, ¶ 8, 177 A.3d 1264.

[¶17] The primary sources of aid in the interpretation and application of ICWA are the interpretive guidelines issued by the federal Bureau of Indian Affairs (BIA). Although not binding, *see* Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,782 (June 14, 2016) (codified, in part, at 25 C.F.R. pt. 23 (2018)) [hereinafter Supplement to 2016 Rule], other states have afforded the guidelines "great weight" in the interpretation of ICWA, *In re Armell*, 550 N.E.2d 1060, 1065 (Ill. App. Ct. 1990); *accord In re Larissa G.*, 51 Cal. Rptr. 2d 16, 19 (Cal. Ct. App. 1996); *People ex rel. T.I.*, 707 N.W.2d 826, 834 (S.D. 2005); *see also Batterton v. Francis*, 432 U.S. 416, 424 (1977) ("Ordinarily, administrative interpretations of statutory terms are given important but not controlling significance.").

[¶18] The current version of the BIA guidelines was issued in 2016. U.S. Dep't of the Interior, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016), https://www.bia.gov/sites/bia.gov/ files/assets/bia/ois/pdf/idc2-056831.pdf [hereinafter 2016 Guidelines]. The

10

2016 Guidelines provide no examples of what constitutes good cause. *See id.* § F(5) at 49-51. Instead, they set out a list of *prohibited* grounds for finding good cause, including, among others, "whether the Tribal court could change the child's placement."[7] *Id.* § F(5) at 50; *see* Notice, Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146, 10,156 (Feb. 25, 2015) [hereinafter 2015 Guidelines]; *see also* 25 C.F.R. § 23.118 (2018). The mother and father argue that the court erred as a matter of law by basing its finding of good cause on precisely this ground, that is, the likelihood or effect of the Tribal Court moving the children to South Dakota if the transfer were granted.[8]

---

[7] In 2016, the BIA promulgated a binding rule for interpreting ICWA in 25 C.F.R. § 23.118 (2018). *See* Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,784 (June 14, 2016); U.S. Dep't of the Interior, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act at 4 (Dec. 2016), https://www.bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf. We need not evaluate whether the binding rule applies to this matter, however, given that it contains the exact same list of prohibited bases on which to find good cause as found in the 2016 Guidelines. *Compare* 25 C.F.R. § 23.118, *with* 2016 Guidelines § F(5) at 49-51.

[8] Courts in some other jurisdictions have imported a best interest analysis into a good cause determination. *E.g.*, *In re Adoption of T.R.M.*, 525 N.E.2d 298, 308 (Ind. 1988); *In re M.E.M.*, 635 P.2d 1313, 1317 (Mont. 1981); *In re Adoption of S.W.*, 41 P.3d 1003, 1013 (Okla. Civ. App. 2001); *In re Interest of J.L.*, 654 N.W.2d 786, 791-93 (S.D. 2002). *Contra* 2016 Guidelines § M(1) at 89; Supplement to 2016 Rule, 81 Fed. Reg. at 38,826-27; *see* Notice, Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146, 10,149 (Feb. 25, 2015); *In re Armell*, 550 N.E.2d 1060, 1065 (Ill. App. Ct. 1990). Because the Department does not suggest that a best interest analysis, or some modified version of it, *see Thompson v. Fairfax Cty. Dep't of Family Servs.*, 747 S.E.2d 838, 850-51 (Va. Ct. App. 2013), is an appropriate basis for finding good cause, and because we conclude that the court did not premise its denial of the motion to transfer on a best interest determination, we do not consider whether and to what extent the child's best interest may or should be considered in determining good cause within the meaning of ICWA.

[¶19] Although the court issued some findings that superficially appear to regard the children's placement—their desire to remain in Maine, their substantial contacts to Maine, and the preservation of the children's familial relationships in Maine—a more fulsome review of the record establishes that the court's focus was instead the difficulty in the presentation of evidence that would occur if jurisdiction were transferred.[9]  In its findings, the court

---

[9] ICWA is silent as to the burden and standard of proof applicable to transfers.  Here, the District Court imposed on the Department, as the party opposing the transfer, the burden of establishing good cause by clear and convincing evidence.  The imposition of this burden is supported by both the BIA Guidelines and decisions of other jurisdictions.  *See* 2016 Guidelines § F(5) at 49-50; Supplement to 2016 Rule, 81 Fed. Reg. at 38,827; 2015 Guidelines, 80 Fed. Reg. at  10,156; Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584, 67,591 (Nov. 26, 1979) [hereinafter 1979 Guidelines]; *People ex rel. J.L.P.*, 870 P.2d 1252, 1257 (Colo. App. 1994);  *In re Adoption of T.R.M.*, 525 N.E.2d at 307; *In re Interest of A.P.*, 961 P.2d 706, 713 (Kan. Ct. App. 1998); *In re M.E.M.*, 635 P.2d at 1317; *In re Adoption of S.W.,* 41 P.3d at 1013; *People ex rel. T.I.*, 707 N.W.2d 826, 834 (S.D. 2005); *Thompson*, 747 S.E.2d at 848.

No party has challenged the court's use of that standard, and we do not address it here, except to note that such a standard suggests that a court's decision as to good cause is a factual determination that would be reviewed for clear error.  *See Guardianship of Grenier*, 2018 ME 66, ¶ 8, 185 A.3d 728 (holding that factual findings, "reached by clear and convincing evidence, are reviewed for clear error" (quotation marks omitted)); *see also People ex rel. T.E.R.*, 305 P.3d 414, 416 (Colo. App. 2013) (reviewing a good cause determination for substantial supporting evidence); *In re Interest of A.P.*, 961 P.2d at 713 (reviewing a good cause determination for "substantial competent evidence to support the trial court's decision that good cause existed not to transfer the case to the tribal court"); *People ex rel. J.J.*, 454 N.W.2d 317, 330 (S.D. 1990) (evaluating the trial court's finding of good cause for clear error).  The father acknowledged this in his brief to us.

Other courts have employed the abuse of discretion standard in their review of good cause determinations.  *See, e.g.*, *People ex rel. J.L.P.*, 870 P.2d at 1258; *In re S.B.C.*, 340 P.3d 534, 539 (Mont. 2014); *In re Interest of D.M.*, 685 N.W.2d 768, 771 (S.D. 2004); *Thompson*, 747 S.E.2d at 844 (stating that the abuse of discretion standard "requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because it would have come to a different result in the first instance" (quotation  marks omitted)).  *Contra People ex rel. T.I.*, 707 N.W.2d at 834 (declining to apply the abuse of discretion standard of review because, "[i]f the presumption is in favor of tribal jurisdiction, then mere discretion to override an ICWA transfer is inconsistent with congressional intent").

12

expressly considered the availability of the witnesses—including the niece's counselor, both children's foster families, the Department caseworkers, the children's teachers, and the mother herself—and concluded that "[a]ll knowledgeable witnesses needed to adjudicate this case further are in southern Maine" and that a transfer of jurisdiction to the Tribal Court would therefore cause a "relative hardship" to the parties and the Tribe. The court also noted that the son's father, who lives in South Dakota, and the niece's mother, who lives in Texas, have played "virtually no parental role" in the children's lives— findings that are relevant to the court's determination that there are no witnesses outside Maine who have any significant knowledge of or testimony to offer about the children.

[¶20] The court further determined that "any possible audio/video accommodations" that would allow the presentation of Maine-based evidence to the Tribal Court in South Dakota did not mitigate the evidentiary burdens

---

Given the various components of a good cause determination, we apply a mixed standard of review in this case. As with other mixed questions of fact and law, including those in child and family matters, we consider issues of law de novo, review for clear error the court's underlying factual findings, and otherwise review the ultimate decision for an abuse of discretion. *See Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 52, 956 A.2d 110 (stating that we review a divorce court's factual findings for clear error, whether the court properly applied the spousal support statute de novo as a question of law, and the ultimate determination of spousal support for an abuse of discretion); *see also Wong v. Hawk*, 2012 ME 125, ¶ 14, 55 A.3d 425 (applying the three-part standard of review to child support decisions); *In re S.B.C.*, 340 P.3d at 539 (discussing the application of a three-part standard of review to ICWA good cause determinations).

created by the 2,000 miles between the Maine court and the Tribal Court. Although the father points to the testimony of the Tribe's ICWA technician—that she is able to "reach out" to attorneys, including state attorneys—and of the GAL and the son's foster father—that they would be willing to speak with the Tribal Court by telephone—the court was not required to believe that evidence, even if uncontroverted and even if offered by an expert witness, nor was the court required to place any great weight on it. *See Rice v. Cook*, 2015 ME 49, ¶ 16, 115 A.3d 86. The evidence presented also supports a reasonable inference that it would be impractical, expensive, and burdensome for the witnesses—all of whom are in Maine—to maintain the connection with the Tribal Court that this case demands, particularly when the Tribe's own representative testified that the Tribal Court likely would conduct the required hearings in South Dakota. *See Ma v. Bryan*, 2010 ME 55, ¶ 7, 997 A.2d 755 (defining "reasonable inferences"). The quality of portions of the transcript of the motion hearing held in Maine, which involved the telephonic participation—or the attempted participation—by the Tribe's representative, the son's father, and the niece's mother fully supports the court's holding that audio/visual accommodations simply would not be effective.

14

[¶21] Aside from its supported findings regarding the evidentiary hardships created by a transfer, the court's focus on the question of jurisdiction rather than placement is also demonstrated by a review of the motion hearing transcript itself. The transcript shows that the hearing was complicated by continuing attempts by the Department and the GAL to inject into the proceeding questions about the physical transfer of the children from Maine to South Dakota. Nevertheless, the court properly stressed over and over again that the question it had to address was whether *jurisdiction* should be transferred to the Tribal Court, not whether the children should be moved to South Dakota. For example, when the Department asked the niece's counselor, "Assume that [the niece] may be moved to the reservation. . . . Based on your work with [the niece], what impact would that have on her?" the court stated, "I don't think I can go down that road. This is an unusual statute but -- I mean, I think it directly relates to what could happen to her if placement was transferred." When the Assistant Attorney General pressed the court, arguing that "the Court is allowed to consider the impact on [the niece] if she is moved. . . . That's good cause. That's the basic issue before the Court," the court correctly declined to consider that factor.

[¶22]  The court sustained the objections by the parents' attorneys to evidence regarding the mother's intent to take the children out of the country if the children are moved to the reservation, the niece's progress with her therapist and her future therapy goals, the niece's fears of being moved to South Dakota, whether the niece has had any contact with her proposed placement in South Dakota, whether the niece would suffer "any trauma related to being back in the process of a courtroom not in the State of Maine," the teen suicide rate on the reservation, whether the niece's current foster family is willing to continue with her placement, whether the son's foster father is willing to continue with his placement, whether the son's foster father is willing to continue to allow contact between the son and his half-siblings and the niece, "what the transition [of jurisdiction] looks like for the children," and the Department supervisor's testimony that it is "in the kids' best interest to remain where they are staying right now."  The court concluded the hearing by noting, "Unusual case, as I said. Different law from what we're used to dealing with, a strongly worded law. Obviously [it] has, you know, intent clearly behind it, and you have to apply whatever the law is."  The trial court thus expressly and correctly recognized, consistent with the 2016 Guidelines, that placement considerations are not a proper basis for determining good cause, and it made repeated rulings designed

to maintain the proper focus of the hearing on the jurisdictional issues. 2016 Guidelines § F(5) at 50; *see* 2015 Guidelines, 80 Fed. Reg. at 10,156; *see also* 25 C.F.R. § 23.118(c)(3); *In re Wayne R.N.*, 757 P.2d 1333, 1336-37 (N.M. Ct. App. 1988) ("An appellate court may look to the remarks or opinions of the trial judge for clarification of ambiguities, as long as such remarks or opinions are not made the basis for error on appeal.").

[¶23]   Unlike placement considerations, the evidentiary hardships imposed by a transfer of jurisdiction *are* an acceptable basis for a finding of good cause.  The BIA stated as much in its first iteration of ICWA guidelines in 1979 by setting out, as one example of an approved ground for finding good cause, that "[t]he evidence necessary to decide the case could not be adequately presented with the tribal court without undue hardship to the parties or the witnesses."[10]  Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584, 67,591 (Nov. 26, 1979).  As the BIA noted, "Application of this criterion will tend to limit transfers to cases involving Indian children who

---

[10] We do not consider the fact that the BIA removed evidentiary hardship as an approved ground for finding good cause in issuing revised guidelines in 2015, *compare* 2015 Guidelines, 80 Fed. Reg. at 10,149, 10,156, *with* 1979 Guidelines, 44 Fed. Reg. at 67,591, to imply that the BIA no longer considered such evidentiary hardship to be a supportable basis for denying a transfer. *See In re Interest of Tavian B.*, 874 N.W.2d 456, 466-68 (Neb. 2016) (Stacy, J., dissenting).  In the 2015 Guidelines, the BIA removed the entire list of approved grounds for finding good cause and instead focused on enumerating which grounds for finding good cause violated the letter or spirit of ICWA. 2015 Guidelines, 80 Fed. Reg. at 10,156.  The 2016 Guidelines maintained this same format. 2016 Guidelines § F(5) at 49-51.

do not live very far from the reservation." *Id.* That the geographic distance between a state court and a tribal court remains an approved basis for finding good cause is further established by the commentary accompanying the 2016 Guidelines, in which the BIA declined the invitation of some commenters to list the distance between the state court and the tribal court as a prohibited basis for finding good cause. 2016 Guidelines § F(5) at 51; *see* Supplement to 2016 Rule, 81 Fed. Reg. at 38,827. The BIA noted only that "[i]f a State court considers the distance of the parties from the Tribal court, it must also weigh any available accommodations that may address the potential hardships caused by the distance." 2016 Guidelines § F(5) at 51; *see* Supplement to 2016 Rule, 81 Fed. Reg. at 38,827. The court did just that in this matter.

[¶24] Indeed, as the BIA stated in the 1979 Guidelines, 44 Fed. Reg. at 67,591, the legislative history of ICWA refers to the good cause determination as a modified *forum non conveniens* analysis: "[Section 1911(b)] is intended to permit a State court to apply a modified doctrine of *forum non conveniens*, in appropriate cases, to insure that the rights of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected." H.R. Rep. No. 95-1386, at 21 (1978).[11] *Forum non conveniens* regards whether one court "'is a seriously

---

[11] We are also not persuaded by the mother's and father's contentions that the Department violated its obligation to disclose on the record its reasons for objecting to the motion to transfer. A

inconvenient forum for the trial of the action'" and "'a more appropriate forum is available.'"[12]  *Corning v. Corning*, 563 A.2d 379, 380 (Me. 1989) (quoting Restatement (Second) of Conflict of Laws § 84 (Am. Law Inst. 1971)).  Much as a *forum non conveniens* analysis demands, the BIA has identified the crux of the good cause inquiry as one of "which court is best positioned to adjudicate the child-custody proceeding."  2016 Guidelines § F(5) at 49.  Which court is best positioned to adjudicate a child protection proceeding—or any matter— necessarily involves a case-by-case consideration of the availability of the evidence, as the court performed here.[13]  *See Shanoski v. Miller*, 2001 ME 139,

---

plain language reading of the 2016 Guidelines supports the Department's contention that it was not required to disclose the basis of its objection in any particular manner or at any particular time other than "on the record or provided in writing," as it did during the motion hearing.  2016 Guidelines § F(5) at 49; *see also* 25 C.F.R. § 23.118(a); 2015 Guidelines, 80 Fed. Reg. at 10,156.

[12]  We recognize that the denial of a motion to transfer jurisdiction as *forum non conveniens* is generally held to be an interlocutory appeal to which none of the exceptions to the final judgment rule applies.  *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 527 (1988) ("We conclude, . . . as have the majority of the Courts of Appeals that have considered the issue, that the question of the convenience of the forum is not completely separate from the merits of the action, and thus is not immediately appealable as of right." (footnote omitted) (citation omitted) (quotation marks omitted)); *Fitzgerald v. Bilodeau*, 2006 ME 122, ¶ 5, 908 A.2d 1212 ("[A]bsent extraordinary circumstances, the denial of a motion to dismiss for *forum non conveniens* . . . is interlocutory, not a final judgment, and therefore not immediately appealable.").  When the *forum non conveniens* decision is based on a determination that good cause exists to deny a transfer of jurisdiction to a tribal court pursuant to ICWA, however, extraordinary circumstances *do* exist.  *See supra* n.6.

[13]  In *MacLeod v. MacLeod*, 383 A.2d 39, 42 (Me. 1978), we adopted the factors to be considered in a *forum non conveniens* analysis as set out by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947):

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant.  Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and

¶ 22, 780 A.2d 275; *see also In re Robert T.*, 246 Cal. Rptr. 168, 174 (Cal. Ct. App. 1988); *In re Interest of J.W.*, 528 N.W.2d 657, 660 (Iowa Ct. App. 1995).

[¶25] Numerous other jurisdictions have held that "[g]ood cause to deny transfer of the proceedings to the tribal court may arise from geographical obstacles." *In re Interest of J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984). In *In re Interest of J.R.H.*, for example, the Iowa Supreme Court considered the denial of a motion filed by the Oglala Sioux Tribe in South Dakota to transfer child protection proceedings initiated in Iowa. *Id.* at 314, 317. The court upheld the denial on the ground that "[t]he bulk of the evidence and the majority of the witnesses will come from Iowa." *Id.* at 317; *accord In re Robert T.*, 246 Cal. Rptr. at 174, 176 (affirming the denial of a motion to transfer from a state court in California to a tribal court in New Mexico); *People ex rel. T.E.R.*, 305 P.3d 414, 418-19 (Colo. App. 2013) (Colorado to Michigan); *In re Adoption of S.S.*, 657 N.E.2d 935, 943 (Ill. 1995) (Illinois to Montana); *In re Interest of A.P.*,

---

the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

(Footnote omitted); *see Corning v. Corning*, 563 A.2d 379, 380 (Me. 1989).

961 P.2d 706, 712-13 (Kan. Ct. App. 1998) (Kansas to South Dakota); *In re Interest of Bird Head*, 331 N.W.2d 785, 790 (Neb. 1983) (Nebraska to South Dakota); *In re Wayne R.N.*, 757 P.2d at 1336-37 (noting that "the tribal court's subpoena power was limited, and the tribal court [in Oklahoma] would not be able to subpoena witnesses in New Mexico"); *In re C.J.*, 108 N.E.3d 677, 695 (Ohio Ct. App. 2018) ("Good cause to deny transfer has been found where, as here, almost all the parties and witnesses reside in the county of the state court and have no contact with the tribal court."); *Chester Cty. Dep't of Soc. Servs. v. Coleman*, 399 S.E.2d 773, 775-77 (S.C. 1990) (South Carolina to South Dakota); *People ex rel. J.J.*, 454 N.W.2d 317, 330 (S.D. 1990) (South Dakota to North Dakota); *see also In re Guardianship of J.C.D.*, 686 N.W.2d 647, 650 (S.D. 2004) (gathering cases).

[¶26] Here, the court's denial of the motion to transfer is fully supported by its findings and conclusions regarding the evidentiary burdens that would be imposed by the fact that all relevant witnesses and evidence are currently located in Maine. The court's analysis of the challenges posed by the geographic distance between the location of the Tribal Court and the location of all of the evidence about and the witnesses with information concerning these children

is supported by ample evidence, contains no legal errors, and does not represent an abuse of discretion.

The entry is:

Judgment affirmed.

---

Lindsay M. Allen, Esq. (orally), Fairfield and Associates, P.A., Lyman, for appellant Shirley T.

Todd H. Crawford Jr., Esq. (orally), Law Office of Todd H. Crawford Jr., P.A., Raymond, for appellant David W.

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket numbers PC-2016-104 and PC-2016-105

For Clerk Reference Only